**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TERRENCE COOK,<br><br>Plaintiff,<br><br>v.<br><br>JOHN McCAUL, *Turtle Creek Police Chief, in his official and individual capacity*; P.O. EMILY CARRIGAN; *and* P.O. TERRY, *both in their individual capacities*,<br><br>Defendants. | ) | Civil Action No. 2:25-cv-744<br><br>District Judge J. Nicholas Ranjan<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 23 |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

For the following reasons, it is respectfully recommended that the Motion for Dismissal of Plaintiff's Amended Complaint ("Motion to Dismiss"), ECF No. 23, filed by Defendants John McCaul ("McCaul"), Emily Carrigan ("Carrigan"), and Mark Terry ("Terry") be granted as set forth herein.

## II. REPORT

### A. FACTUAL BACKGROUND

Plaintiff Terrence Cook ("Plaintiff") brings this *pro se* civil rights action for injuries in connection with an alleged unlawful entry and search of his home and subsequent arrest on May 23, 2023. The factual allegations set forth in this Report and Recommendation are taken from the Amended Complaint. ECF No. 8.

On or about May 23, 2023, Defendants unlawfully entered Plaintiff's home at 215 Robinson Avenue, Pittsburgh, Pennsylvania,[1] without a valid search warrant or probable cause, damaging the property in the process. Id. ¶¶ 7, 9. Defendants Carrigan and Terry, both officers with the Turtle Creek Police Department, conspired to arrest Plaintiff based on false allegations made by Defendant McCaul, the Chief of the Turtle Creek Police Department. Id. ¶¶ 4-6, 10.

Plaintiff was subsequently arrested based on the falsified police report while at work in West Virginia. Id. ¶ 11. The criminal case against Plaintiff was ultimately dismissed. Id. ¶ 12. Plaintiff was forbidden by the police department from re-entering his residence without due process. Id. ¶ 14.

Plaintiff further asserts that Defendant McCaul, as Chief of Police, is liable in his official capacity because the violations of Plaintiff's rights were the direct result of a policy or custom attributable to the Turtle Creek Police Department. Id. ¶ 24. Plaintiff alleges that, as Chief, McCaul is responsible for establishing and implementing policies and customs within the Turtle Creek Police Department. Id. ¶ 26. He argues that the incidents alleged in the Amended Complaint suggest a pattern of conduct constituting a policy, custom, or widespread practice. Id.

**B. PROCEDURAL HISTORY**

Plaintiff initiated this case by filing a Motion to Proceed in Forma Pauperis and lodging a Complaint in the United States District Court for the Eastern District of Pennsylvania on May 27, 2025. ECF Nos. 1, 2. After the case was transferred to this District, Plaintiff paid the requisite filing fee and filed the operative Amended Complaint. ECF Nos. 7, 8. Therein, Plaintiff alleges,

---

1 Although Plaintiff identifies his address of residence as 215 Robinson Avenue in Pittsburgh, as discussed below, the search at issue was conducted pursuant to a warrant identifying Plaintiff's address as 202 11th Street, Turtle Creek, Pennsylvania. ECF No. 24-1. There does not, however, appear to be any disagreement as to whether the May 23 search occurred at Plaintiff's home.

pursuant to 42 U.S.C. § 1983, that Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights by subjecting him to an unlawful search and seizure (Count I), constructive eviction (Count II), and false arrest and malicious prosecution (Count III). ECF No. 8 ¶¶ 15-23. He seeks compensatory damages in the amount of $1,000,000.00, punitive damages, declaratory and injunctive relief, attorney fees and costs, and such other and further relief as the Court may deem just and equitable. Id. at 8.

On December 1, 2025, Defendants filed the instant Motion to Dismiss and brief in support thereof. ECF Nos. 23, 24. On December 23, 2025, Plaintiff filed a Brief in Opposition to the Motion to Dismiss ("Brief in Opposition"). ECF No. 27. Defendants filed a Reply Brief, ECF No. 28, to which Plaintiff filed a Sur-reply, ECF No. 31.

The Motion to Dismiss is ripe for consideration.

**C. STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing a plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-cv-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and

conclusory statements.'" Id. (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)). In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents. See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Where, as here, the plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance.'"). "Yet 'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

### D. DISCUSSION

As noted, Plaintiff brings his claims in the Amended Complaint against Defendants for violating his Fourth, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. This statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. To state a claim under Section 1983, a plaintiff must allege facts sufficient to establish "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Section 1983, by its own terms, creates no substantive rights, but rather provides a means for plaintiffs to seek relief for the deprivation of rights established by the Constitution or federal laws. See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

Defendants seek dismissal of Plaintiff's claims on several grounds. The Court will address each in turn below.

### 1. Unlawful Search and Seizure (Count I)

Plaintiff brings his claim at Count I for the violation of his Fourth Amendment rights based on the unlawful search and seizure at his residence on May 23, 2023.[2] Defendants contend that the search was conducted pursuant to a valid warrant supported by an application and affidavit of probable cause approved by Magisterial District Judge Patrick Campbell. ECF No. 24 at 6. They argue that the Court may take judicial notice of this warrant and should afford Judge Campbell's probable cause determination great deference. Id. Defendants further argue that, in any event, they are entitled to qualified immunity as to Plaintiff's Fourth Amendment claim. Id. at 7-9.

Pursuant to the Fourth Amendment to the United States Constitution:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[2] Plaintiff does not indicate what, if anything, was "seized" as a result of the alleged unlawful search. Accordingly, the Court's analysis focuses on the legality of the search itself.

U.S. Const. Amend. IV. Accordingly, "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable." New Jersey v. T.L.O., 469 U.S. 325, 337 (1985). "[W]hat is reasonable depends on the context within which a search takes place." Id.

In conducting its reasonableness analysis, the Court must first distinguish between searches performed with and without a warrant.

> When a search occurs without a warrant, it is "presumptively unreasonable under the Fourth Amendment." Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996) (citations omitted). On the other hand, where a search is made pursuant to a warrant, the Fourth Amendment requires that the warrant shall not issue unless it is based on probable cause, is supported by a sworn affidavit, and particularly describes both the place to be searched and the items to be seized. See Groh v. Ramirez, 540 U.S. 551, 557 (2004).

El-Bey v. Allentown Police Dep't, Civ. No. 23-652, 2023 WL 3594145, at *9 (E.D. Pa. May 22, 2023).

In the Amended Complaint, Plaintiff asserts that Defendants "unlawfully entered his home without a valid search warrant or probable cause." ECF No. 8 ¶ 9. On its face, it is unclear whether this language is meant to convey that Defendants entered his home with no warrant or whether they had a warrant but the warrant was invalid. Plaintiff does attach as Exhibit B to the Amended Complaint a copy of the Criminal Complaint and Affidavit of Probable Cause signed and verified by Magisterial District Judge Patrick Campbell. ECF No. 8-2. He also references "false allegations" made by Defendant McCaul. ECF No. 8 ¶¶ 10, 25, 26. It therefore appears that Plaintiff is not claiming that Defendants entered his home with no warrant, but rather, that they did so without a "valid" warrant. This understanding is further confirmed by the nature of Plaintiff's argument in his Brief in Opposition. ECF No. 27.

Defendants attach a copy of the May 23, 2023 Search Warrant and Affidavit of Probable Cause for the search of Plaintiff's residence ("May 23 Warrant") granted and signed by Judge

Campbell. ECF No. 24-1. While the May 23 Warrant was not attached to the Amended Complaint itself, courts can consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp., 998 F.2d at 1196. This includes affidavits of probable cause and search warrants. See Palmer v. City of Harrisburg, 276 F. App'x 105, 108 (3d Cir. 2008); Hickman v. Marzec, Civ. No. 05-811, 2008 WL 4279423, at *2 (D. Del. Sept. 18, 2008). Given Plaintiff's apparent reliance on the invalidity of the May 23 Warrant in support of his claim – and given, as discussed below, that the Court is recommending that Plaintiff be permitted to amend Count I in any event – the Court will consider the May 23 Warrant in adjudicating the pending Motion to Dismiss.

The May 23 Warrant clearly provides that Judge Campbell found probable cause to issue a search warrant for Plaintiff's residence.[3] ECF No. 23-1 at 2.

> Where, as here, a neutral magistrate found probable cause in connection with a warrant application, a plaintiff may establish a Fourth Amendment violation by showing that "(1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material or necessary to the finding of probable cause."

Harris v. Trent, No. 3:25-cv-00019, 2026 WL 575066, at *8 (W.D. Pa. Mar. 2, 2026) (quoting Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000)). Plaintiff must therefore allege not only that a Defendant or Defendants made false statements, but that the statements were material and made knowingly and deliberately, or with a reckless disregard for the truth.

---

[3] As noted, the May 23 Warrant sets forth a different address for Plaintiff than the one identified in the Amended Complaint. However, to the extent that Plaintiff could be relying on this discrepancy in challenging the validity of the May 23 Warrant, such an argument cannot be reasonably inferred from the language of the Amended Complaint.

That said, it is not even clear from the Amended Complaint which Defendant(s) Plaintiff is alleging made the false statements to obtain the May 23 Warrant. As noted, Plaintiff vaguely references false allegations by Defendant McCaul in connection with the relevant search and arrest but does not indicate how such statements may have been used to obtain a warrant. ECF No. 8 ¶¶ 10, 25. In any event, the Affidavit for Probable Cause for the May 23 Warrant was sworn out by Defendant Carrigan, not McCaul. ECF No. 23-1. While Plaintiff cursorily alleges that all Defendants "conspired to arrest [him] based on the false allegations from the police chief," ECF No. 8 ¶ 10, it remains ambiguous as to who is alleged to have made the false statements that would invalidate the May 23 Warrant.

Regardless of who allegedly made the false statements, Plaintiff provides no facts that would establish what specifically the false allegations were or how they were relied upon. There is no basis, therefore, for establishing that the alleged false statements were material or, for that matter, what the statements even were. Although Plaintiff refers to fabricated emails in his Brief in Opposition, ECF No. 27 at 3, the Amended Complaint itself contains no reference to any false statements regarding emails. Moreover, Plaintiff fails to plead any facts that would establish that any of the Defendants knew that statements regarding emails sent by Plaintiff were false or that they recklessly disregarded any such falsity. He simply makes a conclusory and ambiguous contention regarding false allegations which is insufficient to establish a Fourth Amendment claim for unlawful search and seizure.[4]

---

[4] Because the Court finds that Plaintiff has failed to adequately plead an unlawful search under the Fourth Amendment, it does not reach the issue of whether Defendants would be entitled to qualified immunity. See Stafford v. Morris, 816 F. App'x 712, 718 n.3 (3d Cir. 2020); Agarwal v. City of Jersey City, 388 F. App'x 199, 202 (3d Cir. 2010).

Accordingly, the Court respectfully recommends that Count I of the Amended Complaint be dismissed. As further discussed below, however, the Court recommends that such dismissal be without prejudice and that Plaintiff be granted leave to amend.

**2. Due Process (Count II)**

Plaintiff's allegation at Count II is that he was constructively evicted from his home as a result of Defendants' conduct without due process in violation of the Fourteenth Amendment. Defendants contend that Plaintiff has failed to plead facts establishing how he was deprived of due process or demonstrating any actions by Defendants that would constitute such a deprivation. ECF No. 24 at 11. They argue that Plaintiff's conclusory allegations fail to meet the threshold of plausibility to establish a claim. Id. at 12. Defendants also point out that Plaintiff fails to establish the personal involvement of any Defendants. Id.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. A procedural due process claim under the Fourteenth Amendment consists of three elements: (1) deprivation of life, liberty, or property (2) by a state actor (3) without due process of law. See Parker v. New Jersey Motor Vehicle Comm'n, 158 F.4th 470, 481 (3d Cir. 2025).

Courts have applied the principles of due process to situations in which a law enforcement officer has deprived the plaintiff of use of his or her home. For example, in Turner v. City of Taylor, 412 F.3d 629 (6th Cir. 2005), the United States Court of Appeals for the Sixth Circuit reversed a district court's grant of summary judgment to a police officer accused of constructive eviction who had confronted the plaintiff when the plaintiff returned home after being released from custody on domestic violence and assault and battery charges. After the officer ordered the plaintiff to leave his house or face arrest, the plaintiff called the police department and was also

told by a supervising officer that he would go to jail if he did not leave his house. The Sixth Circuit found that "[s]uch police action arguably was ... a denial of due process in violation of the Fourteenth Amendment." Id. at 644-45. See also Clements v. Brimfield Twp., No. 1:12-cv-1180, 2012 WL 5507305 (N.D. Ohio Nov. 14, 2012) (finding a valid due process claim where plaintiff asserted that officers would not allow him to go into his home, confiscated his key, and told him if he came back to the house that night he would be arrested).

The problem here, however, is that Plaintiff has provided virtually no factual basis for his due process claim. While he arguably establishes a property interest in his home,[5] see Cox v. Drake, No. C-1-04-277, 2006 WL 508723, at *4 (S.D. Ohio Mar. 1, 2006), he offers nothing but conclusory allegations regarding the supposed deprivation or the process allegedly due to him. There is nothing to establish, *e.g.*, the means by which police "forbade" him to re-enter his home or the duration of such an event. Likewise, there are no allegations regarding the process due or how it was denied.

Moreover, as Defendants point out, Plaintiff has not stated who specifically prevented him from re-entering his residence or even if the Defendants were personally involved at all. It is well-established that to prevail on a Section 1983 claim, a plaintiff must show that a defendant was "personally involved" in the alleged deprivation of rights. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). See also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). It is not enough that a defendant was simply employed at the government agency under which the alleged violation arose. See Rode, 845 F.2d at 1208. Therefore, merely by alleging that "the police department,"

---

5 The Court notes, as discussed above, that it is not entirely clear what property was the subject of the search in this matter, as Plaintiff's purported address is different from the one set forth in the May 23 Warrant.

ECF No. 8 ¶ 14, prevented him from entering his home, Plaintiff has not implicated any of the specific Defendants named in the Amended Complaint.

Allegations of participation, or actual knowledge and acquiescence, "must be made with appropriate particularity." Rode, 845 F.2d at 1208. Accordingly, a complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. See Evancho, 423 F.3d at 353. Plaintiff's allegations in the Amended Complaint fall well short of doing so.

Therefore, the Court recommends that Count II of the Amended Complaint be dismissed. However, as with Count I, the Court recommends that Plaintiff be given leave to amend this count.

### 3. False Arrest/Malicious Prosecution (Count III)

At Count III, Plaintiff contends that by arresting him based on a falsified police report, Defendants subjected him to a false arrest and malicious prosecution. Although Plaintiff does not specify the particular constitutional right at issue in regard to this claim, such causes of action are generally grounded in the Fourth Amendment's protections. See Zvolensky v. Butler, No. 3:23-cv-1722, 2025 WL 906217, at * 3, 6 (M.D. Pa. Mar. 25, 2025).[6]

Defendants argue that Plaintiff fails to set forth sufficient facts to support a claim for false arrest or malicious prosecution. They contend that Plaintiff relies on nothing but bald legal conclusions without any supporting non-conclusory factual allegations. ECF No. 24 at 9-10. They conclude that this lack of detail and context requires dismissal of Count III. Id.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' Because arrests are

---

6 Plaintiff includes in the Amended Complaint a general statement that his Fifth Amendment rights were also violated, ECF No. 8 ¶ 8, but he does not tie any of the three counts to the Fifth Amendment. To the extent that Plaintiff is attempting to raise a separate Fifth Amendment claim for false arrest or malicious prosecution, such a claim should be dismissed. See Zvolensky, 2025 WL 906217, at * 3, 6.

'seizures of persons,' they must be reasonable under the circumstances." District of Columbia v. Wesby, 583 U.S. 48, 56 (2018) (quoting Payton v. New York, 445 U.S. 573, 585 (1980)). Plaintiff asserts that both his arrest and the subsequent prosecution were without probable cause and in violation of his constitutional rights.

"To bring a claim for false arrest, a plaintiff must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'" Harvard v. Cesnalis, 973 F.3d 190, 199 (3d Cir. 2020) (quoting James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012)). Similarly, "[t]o prevail on a malicious prosecution claim, a plaintiff must demonstrate that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" Id. at 203 (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Accordingly, the absence of probable cause is an essential element of each of these claims. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016). Whether probable cause exists is assessed based upon the "totality-of-the-circumstances" available to the arresting officer. Harvard, 973 F.3d at 200 (citing Dempsey, 834 F.3d at 467-68).

Here, Plaintiff's claims are so vague that the Court cannot find that he has pled the necessary elements outlined above. In regard to the alleged false arrest, Plaintiff does not identify who specifically arrested him, stating merely that the arrest occurred in West Virginia. ECF No.

8 ¶ 11. As explained above, a defendant "must have personal involvement in the alleged wrongs" to be liable under Section 1983, and allegations of participation, or actual knowledge and acquiescence, "must be made with appropriate particularity." Rode, 845 F.2d at 1207-08. Further, Plaintiff does not provide any allegations as to what was known by the arresting officers at the time, relying again only on vague allegations of conspiracies and false statements. There is no basis for an inference that whoever arrested him lacked probable cause at the time of the arrest.[7]

In regard to his malicious prosecution claim, Plaintiff attaches the docket sheet for Case No. MJ-05247-cr-0000297-2023, showing that he was charged with two counts of making terroristic threats pursuant to 18 Pa. Cons. Stat. § 2706(a)(3), and that those charges were dismissed on July 25, 2023. ECF No. 8-1. However, he pleads no facts that would permit an inference that the prosecution was brought without probable cause and with the requisite level of malice. Therefore, his malicious prosecution claim should also be dismissed.

Accordingly, the Court recommends that Count III of the Amended Complaint be dismissed without prejudice to amend.

#### 4. Monell Allegations

Plaintiff also includes in the Amended Complaint a section he labels "Argument in Support of Monell Liability." ECF No. 8 ¶¶ 24-26. Therein, he argues that McCaul, as Chief of Police, is liable in his official capacity under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). He argues that, as Chief, McCaul is responsible for establishing and implementing policies and customs within the Turtle Creek Police Department. Id. ¶ 26. He asserts that actions such as falsifying police reports and "forbidding" Plaintiff from re-entering his home were not

---

[7] Again, Plaintiff discusses fabricated emails in his Brief in Opposition, ECF No. 27 at 3, but no such allegations are made in the Amended Complaint itself.

random acts but instead reflect a custom, policy, or widespread practice within the Turtle Creek Police Department. Id. Plaintiff contends that McCaul demonstrated his deliberate indifference by participating in the falsification of information and failing to adequately train, supervise, and discipline officers regarding constitutional rights. Id.

Plaintiff does not set forth his allegations regarding Monell liability as a separate count but as more of an argument regarding McCaul's liability. Defendants do not directly address this part of the Amended Complaint. In any event, to the extent that Plaintiff seeks to raise a separate claim pursuant to Monell, he has failed to adequately do so.

Municipalities and other local government units and their employees can be subject to liability under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. Nonetheless, courts have made it clear that "[n]ot all state action rises to the level of a custom or policy. A policy is established 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)). A custom is a course of conduct "'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Id. (quoting Bd. of Comm'rs of Bryan Cnty., Oklahoma v. Brown, 520 U.S. 397, 404 (1997)). A plaintiff must demonstrate "an affirmative link" or "plausible nexus" between the policy or custom and the alleged injury. Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990).

Moreover, "[i]t is the plaintiff's burden ... to establish that a particular individual is a policymaker." Shaw v. Burlington Cnty. Corr., No. 1:11-cv-07056, 2013 WL 3949021, at *6

(D.N.J. Aug. 1, 2013). Merely labeling a defendant as a final policymaker "is an unsupported legal conclusion, which is not entitled to any deference on a motion to dismiss." Roper v. Luzerne Cnty., No. 3:22-cv-307, 2023 WL 2563082, at *6 (M.D. Pa. Mar. 17, 2023) (citing Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013)).

Here, Plaintiff alleges that McCaul, as the Chief of Police, was a final policymaker. However, a police chief is not necessarily a policymaker for the purpose of Monell liability. See Cruz v. City of Paterson, No. 2:20-cv-15802, 2026 WL 850792 (D.N.J. Mar. 27, 2026); Herron v. Skilonger, No. 3:23-cv-00584, 2025 WL 1208934, at *4 (M.D. Pa. Apr. 25, 2025). Rather, "whether [the police chief] is a final policymaker is ultimately a legal rather than a factual question," and a plaintiff has an obligation to plead facts that establish final policymaking authority. Cruz, 2026 WL 850792, at *1 (quoting Santiago v. Warminster Twp., 629 F.3d 121, 135 n.11 (3d Cir. 2010)). It is not enough, therefore, for Plaintiff to broadly allege, without any factual basis, that, as Police Chief, McCaul was "the highest-ranking official" and "had final policymaking authority regarding police practices and procedures." ECF No. 8 ¶ 26.

Regardless, Plaintiff does not identify any custom or policy but merely a single incident of alleged wrong-doing. "[I]solated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." Timko v. City of Hazleton, 665 F. Supp. 1130, 1138 (M.D. Pa. 1986). Plaintiff must do more than claim the search and arrest here "suggest a pattern of conduct." ECF No. 8 ¶ 26. He must identify an actual policy or a custom so widespread as to have the force of law. The allegations contained in the Amended Complaint do not do so.[8]

---

8 Plaintiff's allegations likewise fail to demonstrate that McCaul knew of and disregarded any particular excessive risk to Plaintiff so as to establish deliberate indifference. See Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 441 (3d Cir. 2020).

Thus, to the extent that Plaintiff's Monell allegations are an attempt to raise a new claim, the Court recommends that they be dismissed.

### E. LEAVE TO AMEND

If a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Budhun v. Reading Hosp. and Med. Cntr., 765 F.3d 245, 259 (3d Cir. 2014). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Id.

As discussed herein, Plaintiff's Section 1983 claims are insufficient as stated, but this insufficiency is based primarily on a lack of specificity and/or the failure to plead supporting facts. He has only amended his complaint once previously, and this is the first time his pleading has been scrutinized under a Rule 12(b)(6) motion. Plaintiff may or may not be able to plead facts adequate to support his claims, but amendment is certainly not futile. Therefore, the Court recommends that Plaintiff be granted leave to file a Second Amended Complaint.

### F. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 23, be granted. However, it is further recommended that Plaintiff's claims be dismissed without prejudice and with leave to amend within 30 days of the Court's order regarding this Report and Recommendation.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir.

2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: August 17, 2026

cc: The Honorable J. Nicholas Ranjan
United States District Judge

All counsel of record by Notice of Electronic Filing

Terrence Cook
215 Robinson Street
Pittsburgh, PA 15213